**EXHIBIT 1**

MORTGAGE LOAN NOTE

$600,000.00 (U.S.)                    Date: December 15, 1992

            MORTGAGE NOTE made this 15 th day of December, 1992, by and between Tessa Kennedy, a residing at 1 East 62nd Street, New York, New York (hereinafter called the "Maker") and the parties set forth on Schedule 1 annexed hereto (hereinafter collectively called the "Payee").

            Maker (jointly and severally, if more than one) promises to pay to the order of Payee at the office of its servicing agent, Oberman, Tivoli, Miller & Low at 500 South Sepulveda Boulevard, Los Angeles, California, or such other place as may be designated in writing by the holder of this Note, the principal sum of Six Hundred Thousand and 00/100 Dollars ($600,000.00) lawful money of the United States with interest, which the undersigned also promises and covenants to pay to any holder hereof, as follows:

1.   Payments

            This Note must be paid in full on or before December ___, 1993, which is called the "Maturity Date". Payment shall be made as follows:

            (A)  Maker shall pay the interest accrued on the Note in equal monthly payments of $7,500.00 beginning on the ___ day of December and on the ___ day of every month thereafter until the Maturity Date (each such payment date being called a "Monthly Payment Date").  In the event that a Monthly Payment Date falls on a date that does not exist because of a month shorter than thirty-one days, then the Monthly Payment Date for such month shall be the last day of such month.  The Maker will make these monthly payments on the Monthly Payment Date for each and every month until the Maturity Date when the entire unpaid principal balance, together with outstanding accrued interest and any other unpaid charges described in this Note are paid in full.

            (B)  All payments shall be made at the offices of the servicing agent set forth above or at a different place if required by Payee or the holder of this Note.

2.   Interest

            Interest will be charged on that part of the principal amount of this Note which has not previously been paid to Payee in good and cleared funds (the "Principal Balance") and shall be based upon a 360-day year factor for the actual number of days elapsed.  Interest will be charged at the annual rate of fifteen (15%) percent beginning on the date of this Note and continuing until the full amount of principal has been paid in good and cleared funds.

3.   Prepayment

            Maker reserves the right to prepay the entire unpaid principal and all interest, in full, prior to the Maturity Date. However, in no event whatsoever during the initial ninety days shall the amount of interest paid to Payee upon any such prepayment be less than $22,500, representing a minimum of three months' interest, which such interest shall be deemed earned upon the execution of this Note by Maker. Maker shall not have the right to prepay less than the entire principal amount and all interest, whether prepayment is voluntary or involuntary.

4.  Mortgage, Waivers, Compliance with Loan Documents

This Note is secured by a mortgage made by Makers of the date hereof (hereinafter called the "Mortgage") encumbering property known as Condominium Units 4A and 4B in the Spencer Condominium located at 1 East 62nd Street, New York, New York (hereinafter called the "Property"), which specifies various defaults upon the happening of which all sums owing on this Note may be declared immediately due and payable. Maker hereby waives presentment and demand for payment, notice of dishonor, protest and notice of protest of this Note and agrees to pay all costs of collection when incurred, including reasonable attorneys' fees and disbursements (which costs may be added to the amount due under this Note and shall be receivable therewith) and to perform and comply with each of the terms, covenants and provisions contained in the documents (the "Loan Documents") evidencing or securing this loan from Maker to Payee (including without limitation) this Note, the Mortgage and [the Assignment of Leases and Rents] made by Maker and given to Payee as of the date hereof, and all other documents executed by Maker in connection with, or to evidence, any indebtedness of Maker to Payee or to secure or collateralize such indebtedness, on the part of Maker to be observed or performed.

5.  Application of Payments

All payments received by the Payee shall be applied, first to payments made by Payee to enforce and/or protect its right under the Loan Documents and/or its lien under the Mortgage; second, to pay unpaid late charges; third on account of interest; and then on account of principal.

6.  No Release

No release of any security for: (i) Principal Balance, (ii) interest accrued and unpaid thereon and (iii) other sums due under this Note, the Mortgage and/or the Loan Documents (hereinafter collectively called the "Debt") or extension of time for payment of this Note, or any installment thereof, and no alteration, amendment or waiver of any provision of this Note, or other Loan Documents made by agreement between Payee and any other person or party shall release, discharge, modify, change or affect the liability of Maker under this Note, and/or the Loan Documents. The right to plead any and all statutes of limitations as a defense to any demand on this Note, or any guaranty hereof, or any agreement to pay the same, or any demand secured by the Mortgage, or any and all obligations and liabilities arising out of or in connection with this Note or the Loan Documents, is expressly waived by the Maker, endorsers or guarantors to the fullest extent permitted by law.

7.  Writings

This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

8.  Event of Default

It is hereby expressly agreed that the entire Debt shall, then or at any time thereafter, without notice become immediately due and payable at the option of Payee after default in the payment of any sum or sums of money payable hereunder or under the terms of the Mortgage for ten (10) days after the due date thereof or upon the happening of any default or event by which, under the terms of this Note, or under the Mortgage, or other Loan Documents, said principal sum may or

-2-

shall become due and payable ("Event of Default"). Maker agrees that all of the covenants, conditions and provisions contained in the Mortgage are hereby made a part of this Note.

Even if, at a time when Maker is in default, Payee does not require Maker to pay immediately in full as described above, Payee will still have the right to do so if Maker is in default at a later time.

If Payee has required Maker to pay immediately in full as described above, Payee will have the right to be paid back by Maker for all its reasonable costs and expenses to the extent not prohibited by applicable law, including, without limitation, reasonable attorneys' fees, together with interest thereon at the Involuntary Rate.

It is further agreed that the obligation of this Note shall continue until the entire debt evidenced hereby is paid notwithstanding any action or actions, whether by foreclosure or otherwise, which may be brought to recover any sum or sums of money payable under the provisions of this Note, the Mortgage, or the Loan Documents.

All of the terms, covenants and provisions contained in the Loan Documents which are to be kept and performed by Maker are hereby made part of this Note to the same extent and with the same force and effect as if they were fully set forth in this Note. The Payee's failure to exercise any option or other rights it may have in the event of the occurence any such Event of Default, shall not constitute a waiver of the right to exercise such option or any other rights in the event of any subsequent Event of Default, whether of the same or different nature.

## 9.  Late Charge

If any sum payable under this Note is not paid on its due date, and is overdue for more than ten (10) days, Maker shall pay upon demand a late payment charge of six cents ($.06) for each dollar ($1) of such payment so overdue to defray the expenses incurred by Payee in handling and processing such delinquent payment, and such amount shall be secured by the Loan Documents. Such charge may at Payee's option be added to the Principal Balance and its payment secured by the Loan Documents. In addition thereto, in the event any check delivered in payment of any sum or sums of money due under this Note or any of the Loan Documents is dishonored, Payee may charge and Maker shall pay a reasonable sum for the expense of handling such dishonored check.

## 10.  Involuntary Rate

Notwithstanding anything to the contrary contained in this Note, including any express interest rates set forth herein, interest due hereunder shall be payable at the rate (the "Involuntary Rate") equal to the lower of (A) 24% per annum, or (B) the maximum legal rate permitted under the laws of the State of New York (for loans such as the loan evidenced by this Note with respect only to (i) interest accruing after the maturity of this Note; (ii) interest accruing prior to the maturity of this Note and the Mortgage but unpaid at such maturity; and (iii) interest during any period during which Maker has failed to make any payment, or is otherwise in default, hereunder. The provisions of this paragraph shall not be deemed to extend, modify or amend the date when any payment or performance is due.

11. Notices

All notices, demands, request, consents and other communications which are required or permitted to be given under this Note shall be sufficiently given when given as set forth in the Mortgage.

12. Applicable Law

This Note and the Loan Documents shall be governed by and construed in accordance with the laws of the State of New York and any applicable federal law. In the event of a conflict between any provision of this Note and any federal or New York State statute, law or regulation in effect as of the date of this Note, the statute, law or regulation shall control to the extent of such conflict and the provision contained in this Note shall be without effect. All other provisions of this Note will remain fully effective and enforceable.

13. Maximum Rate

In the event the interest provisions hereof or any exactions provided for herein or in the Mortgage, or any other Loan Documents or documents collateral thereto shall result because of the monthly reduction of principal, or for any reason at any time during the life of the loan, in an effective rate of interest which, for any month, transcends the limit of the usury or any other law applicable to the loan evidenced hereby, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice between or by any party hereto, be applied upon principal immediately upon receipt of such moneys by the Payee with the same force and effect as though the Maker had specifically designated such extra sums to be so applied to principal and the Payee had agreed to accept such extra payment(s) as a premium-free prepayment. In no event shall any agreed to or actual exaction as consideration for this loan transcend the limits imposed or provided by the law applicable to this transaction or the Maker in the jurisdiction in which the land is located for the use or detention of money or for forebearance in seeking its collection.

14. Responsibility of Persons Under This Note/Jurisdiction

If more than one person signs this Note as Maker, each of them is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note and the Loan Documents. Under the guaranty of this Note (the "Guaranty") if any, the guarantor, or any surety under the guaranty of this Note (the "Guaranty") if any, or endorser of this Note ("Guarantor") is also obligated to do these things. Payee may enforce its rights under this Note against each Maker individually or against all Makers together. This means that any one Maker or Guarantor may be required to pay all of the amounts owed under this Note.

Any person who takes over the rights or obligations of the Maker under this Note will have all of Maker's rights and must keep all Maker's promises made in this Note. Any person who takes over the rights or obligations of a Guarantor, or a surety or endorser of this Note is also obligated to keep all of the promises in this Note and the Loan Documents.

This Note cannot be modified, amended or terminated orally. If any part of this Note shall not be valid under the laws of the State of New York or under any other law, such part shall be rendered inoperative, but the remainder of this Note shall be enforceable. Maker irrevocably consents to the jurisdiction of the courts of the State of New York and

irrevocably agrees that any action or proceeding brought with
respect to or in connection with the Loan Documents (including
without limitation, the Note, the Mortgage, and the Guaranty)
shall be brought, commenced or maintained in such court in the
City and State of New York as Payee shall designate, unless
Payee shall designate a different jurisdiction.

15.  <u>Joint and Several</u>

        If Maker consists of more than one person or party,
the obligations and liabilities of each such person or party
hereunder shall be joint and several.

16.  <u>Power</u>

        Maker (and the undersigned representatives of Maker,
if any) represents that Maker has full power, authority and
legal right to execute and deliver this Note and that the Debt
hereunder constitutes a valid and binding obligation of Maker.

17.  <u>Form</u>

        Whenever used in this Note, the singular number shall
include the plural, the plural the singular, and the words
"Payee" and "Maker" shall include their respective successors
and assigns.

        IN WITNESS WHEREOF, Maker has duly executed this Note
as of the day and year first above written.

WITNESSETH:

_____     By: x _____
                                     Tessa Kennedy

                                     By Cassian Elwes
                                     Atty in fact

-5-

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE U~ 'Y LAWYERS ONL'

**THIS MORTGAGE,** made the 15th   day of   December   XXXXXXXX    , nineteen hundred and ninety-two

**BETWEEN**

TESSA KENNEDY, an individual, having an address at 1 East 62nd Street, New York, New York

, the mortgagor,

and   OBERMAN, TIVOLI, MILLER and LOW, as servicing agent for the parties designated on Schedule I attached hereto and made a part hereof

, the mortgagee,

**WITNESSETH,** that to secure the payment of an indebtedness in the sum of     SIX HUNDRED THOUSAND and 00/100 ($600,000.00)

lawful money of the United States, to be paid _____   dollars,

with interest thereon to be computed from the date hereof, at the rate of fifteen percent (15%) per annum, and to be paid on the _____ day of _____ 19__, next ensuing and thereafter.

_____according to a certain bond, note or obligation bearing even date herewith, the mortgagor hereby mortgages to the mortgagee

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

See Schedule A annexed hereto and made a part hereof

---

**TOGETHER** with all right, title and interest of the mortgagor in and to the land lying in the streets and roads in front of and adjoining said premises;

**TOGETHER** with all fixtures, chattels and articles of personal property now or hereafter attached to or used in connection with said premises, including but not limited to furnaces, boilers, oil burners, radiators and piping, coal stokers, plumbing and bathroom fixtures, refrigeration, air conditioning and sprinkler systems, wash-tubs, sinks, gas and electric fixtures, stoves, ranges, awnings, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, plants and shrubbery and all other equipment and machinery, appliances, fittings, and fixtures of every kind in or used in the operation of the buildings standing on said premises, together with any and all replacements thereof and additions thereto;

**TOGETHER** with all awards heretofore and hereafter made to the mortgagor for taking by eminent domain the whole or any part of said premises or any easement therein, including any awards for changes of grade of streets, which said awards are hereby assigned to the mortgagee, who is hereby authorized to collect and receive the proceeds of such awards and to give proper receipts and acquittances therefor, and to apply the same toward the payment of the mortgage debt, notwithstanding the fact that the amount owing thereon may not then be due and payable; and the said mortgagor hereby agrees, upon request, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning said awards to the mortgagee, free, clear and discharged of any encumbrances of any kind or nature whatsoever.

**AND** the mortgagor covenants with the mortgagee as follows:

1. That the mortgagor will pay the indebtedness as hereinbefore provided.

2. That the mortgagor will keep the buildings on the premises insured (i) against loss by fire for the benefit of the mortgagee, (ii) against loss by flood if the premises are located in an area identified by the Secretary of Housing and Urban Development as an area having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Act of nineteen hundred sixty-eight; that he will assign and deliver the policies to the mortgagee; and that he will reimburse the mortgagee for any premiums paid for insurance made by the mortgagee on the mortgagor's default in so insuring the buildings or in so assigning and delivering the policies."

3. That no building on the premises shall be altered, removed or demolished without the/consent of the *prior written* mortgagee.

4. That the whole of said principal sum and interest shall become due at the option of the mortgagee: after default in the payment of any instalment of principal or of interest for fifteen days; or after default in the payment of any tax, water rate, sewer rent or assessment for thirty days after notice and demand; or after default after notice and demand either in assigning and delivering the policies insuring the buildings against loss by fire or in reimbursing the mortgagee for premiums paid on such insurance, as hereinbefore provided; or after default upon request in furnishing a statement of the amount due on the mortgage and whether any off-sets or defenses exist against the mortgage debt, as hereinafter provided. An assessment which has been made payable in instalments at the application of the mortgagor or lessee of the premises shall nevertheless, for the purpose of this paragraph, be deemed due and payable in its entirety on the day the first instalment becomes due or payable or a lien.

5. That the holder of this mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

6. That the mortgagor will pay all taxes, assessments, sewer rents or water rates, and in default thereof, the mortgagee may pay the same.

7. That the mortgagor within five days upon request in person or within ten days upon request by mail will furnish a written statement duly acknowledged of the amount due on this mortgage and whether any off-sets or defenses exist against the mortgage debt.

8. That notice and demand or request may be in writing and may be served in person or by mail.

9. That the mortgagor warrants the title to the premises.

10. That the fire insurance policies required by paragraph No. 2 above shall contain the usual extended coverage endorsement; that in addition thereto the mortgagor, within thirty days after notice and demand, will keep the premises insured against war risk and any other hazard that may reasonably be required by the mortgagee. All of the provisions of paragraphs No. 2 and No. 4 above relating to fire insurance and the provisions of Section 254 of the Real Property Law construing the same shall apply to the additional insurance required by this paragraph.

11. That in case of a foreclosure sale, said premises, or so much thereof as may be affected by this mortgage, may be sold in one parcel.

12. That if any action or proceeding be commenced *including* an action to foreclose this mortgage or to collect the debt secured thereby), to which action or proceeding the mortgagee is made a party, or in which it becomes necessary to defend or uphold the lien of this mortgage, all sums paid by the mortgagee for the expense of any litigation to prosecute or defend the rights and lien created by this mortgage (including reasonable counsel fees), shall be paid by the mortgagor, together with interest thereon at the rate of xix per cent. per annum, and any such sum and the interest thereon shall be a lien on said premises, prior to any right, or title to, interest in or claim upon said premises attaching or accruing subsequent to the lien of this mortgage, and shall be deemed to be secured by this mortgage. In any action or proceeding to foreclose this mortgage, or to recover or collect the debt secured thereby, the provisions of law respecting the recovering of

13. That the mortgagor hereby as             to the mortgagee the rents, issues and profits of the
security for the payment of said i            edness, and the mortgagor grants to the mortgagee             rises as further
upon and to take possession of the  p   emises for the purpose of collecting the same and to let the premises or
any part thereof, and to apply the rents, issues and profits, after payment of all necessary charges and expenses.
on account of said indebtedness. This assignment and grant shall continue in effect until this mortgage is paid.
The mortgagee hereby waives the right to enter upon and to take possession of said premises for the purpose of
collecting said rents, issues and profits, and the mortgagor shall be entitled to collect and receive said rents,
issues and profits until default under any of the covenants, conditions or agreements contained in this mort-
gage, and agrees to use such rents, issues and profits in payment of principal and interest becoming due on
this mortgage and in payment of taxes, assessments, sewer rents, water rates and carrying charges becoming
due against said premises, but such right of the mortgagor may be revoked by the mortgagee upon any default,
on five days' written notice. The mortgagor will not, without the written consent of the mortgagee, receive or
collect rent from any tenant of said premises or any part thereof for a period of more than one month in ad-
vance, and in the event of any default under this mortgage will pay monthly in advance to the mortgagee, or
to any receiver appointed to collect said rents, issues and profits, the fair and reasonable rental value for the
use and occupation of said premises or of such part thereof as may be in the possession of the mortgagor, and
upon default in any such payment will vacate and surrender the possession of said premises to the mortgagee,
or to such receiver, and in default thereof may be evicted by summary proceedings.

14. That the whole of said principal sum and the interest shall become due at the option of the mortgagee:
(a) after failure to exhibit to the mortgagee, within ten days after demand, receipts showing payment of all
taxes, water rates, sewer rents and assessments; or (b) after the actual or threatened alteration, demolition or
removal of any building on the premises without the written consent of the mortgagee; or (c) after the
assignment of the rents of the premises or any part thereof without the written consent of the mortgagee; or
(d) if the buildings on said premises are not maintained in reasonably good repair; or (e) after failure to com-
ply with any requirement or order or notice of violation of law or ordinance issued by any governmental depart-
ment claiming jurisdiction over the premises within three months from the issuance thereof; or (f) if on
application of the mortgagee two or more fire insurance companies lawfully doing business in the State of New
York refuse to issue policies insuring the buildings on the premises; or (g) in the event of the removal, dem-
olition or destruction in whole or in part of any of the fixtures, chattels or articles of personal property
covered hereby, unless the same are promptly replaced by similar fixtures, chattels and articles of personal
property at least equal in quality and condition to those replaced, free from chattel mortgages or other en-
cumbrances thereon and free from any reservation of title thereto; or (h) after thirty days' notice to the
mortgagor, in the event of the passage of any law deducting from the value of land for the purposes of taxation
any lien thereon, or changing in any way the taxation of mortgages or debts secured thereby for state or local
purposes; or (i) if the mortgagor fails to keep, observe and perform any of the other covenants, conditions or
agreements contained in this mortgage.

15. That the mortgagor will, in compliance with Section 13 of the Lien Law, receive the advances secured
hereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of
paying the cost of the improvement and will apply the same first to the payment of the cost of the improve-
ment before using any part of the total of the same for any other purpose.

*Strike out this clause 16 if inapplicable.*

16. ~~That the execution of this mortgage has been duly authorized by the board of directors of the mortgagor.~~

Deleted prior to execution.

This mortgage may not be changed or terminated orally. The covenants contained in this mortgage shall
run with the land and bind the mortgagor, the heirs, personal representatives, successors and assigns of the
mortgagor and all subsequent owners, encumbrancers, tenants and subtenants of the premises, and shall enure
to the benefit of the mortgagee, the personal representatives, successors and assigns of the mortgagee and all
subsequent holders of this mortgage. The word "mortgagor" shall be construed as if it read "mortgagors"
and the word "mortgagee" shall be construed as if it read "mortgagees" whenever the sense of this mortgage
so requires.

IN WITNESS WHEREOF, this mortgage has been duly executed by the mortgagor.

In presence of:



Witness

TESSA KENNEDY

## ALL-PURPOSE ACKNOWLEDGMENT

No. 5179

State of _CALIFORNIA_ }

County of _LOS ANGELES_ }

On _Dec. 15, 1992_ before me, _Darrell Armstrong, Notary Public_,
DATE                              NAME, TITLE OF OFFICER - E.G., "JANE DOE, NOTARY PUBLIC"

personally appeared _CASSIAN CARY ELWES_,
                                          NAME(S) OF SIGNER(S)

☐ personally known to me - OR - ☑ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are
subscribed to the within instrument and
acknowledged to me that he/she/they
executed the same in his/her/their
authorized capacity(ies), and that by
his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of
which the person(s) acted, executed the
instrument.

OFFICIAL SEAL
DARRELL ARMSTRONG
Notary Public-California
LOS ANGELES COUNTY
My Commission Expires
April 5, 1994

Witness my hand and official seal.

_Darrell Armstrong_
SIGNATURE OF NOTARY

**CAPACITY CLAIMED BY SIGNER**

☐ INDIVIDUAL
☐ CORPORATE _____
   OFFICER(S)
                        TITLE(S)
☐ PARTNER(S)  ☐ LIMITED
              ☐ GENERAL
☑ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____
   _____

**SIGNER IS REPRESENTING:**
NAME OF PERSON(S) OR ENTITY(IES)

_TESSA KENNEDY_
_____
_____

ATTENTION NOTARY: Although the information requested below is OPTIONAL, it could prevent fraudulent attachment of this certificate to an unauthorized document.

**THIS CERTIFICATE
MUST BE ATTACHED
TO THE DOCUMENT
DESCRIBED AT RIGHT:**

Title or Type of Document _____
Number of Pages _____ Date of Document _____
Signer(s) Other than Named Above _____

©1992 NATIONAL NOTARY ASSOCIATION • 8236 Remmet Ave., P.O. Box 7184 • Canoga Park, CA 91304-718

SS.:

COUNTY OF _____ )

On the    day of November, 1992, before me personally came CASSIAN ELMER, to me known and known to me to be the individual who executed the foregoing instrument, and known to me to be the individual described in and appointed attorney-in-fact by a certain Power of Attorney executed by TESSA KENNEDY bearing date the 23rd day of October, 1992, and acknowledged that he executed the foregoing instrument as the act of said TESSA KENNEDY and as her attorney-in-fact.

_____
Notary Public

On the    day of    19    , before me personally came

to me known to be the individual    described in and who executed the foregoing instrument, and acknowledged that executed the same.

---

**STATE OF NEW YORK, COUNTY OF**                                  ss

On the    day of    19    , before me personally came

to me known, who, being by me duly sworn, did depose and say that    he resides at No.

that    he is the    ;

of

, the corporation described in and which executed the foregoing instrument; that    he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that    he signed h    name thereto by like order.

**STATE OF NEW YORK, COUNTY OF**                                  ss

On the    day of    19    , before me personally came

the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that    he resides at No.

that    he knows

to be the individual described in and who executed the foregoing instrument; that    he, said subscribing witness, was present and saw execute the same; and that    he, said witness, at the same time subscribed h    name as witness thereto

---

### Mortgage

TITLE NO

TESSA KENNEDY

TO

OBERMAN, TIVOLI, MILLER and LOW



STANDARD FORM OF NEW YORK BOARD OF TITLE UNDERWRITERS

Distributed by

**TITLE GUARANTEE-NEW YORK**

A TICOR COMPANY

SECTION

BLOCK 1377

LOT 1107 and 1108

COUNTY OR TOWN  New York

Recorded At Request of The Title Guarantee Company

RETURN BY MAIL TO

Bachner, Tally, Polevoy & Misher
380 Madison Avenue
New York, New York 10017
Attn:  Andrew T. Nichols, Esq.

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

RIDER TO MORTGAGE
BETWEEN OBERMAN, TIVOLI, MILLER AND LOW, Servicing Agent, as
Mortgagee, and TESSA KENNEDY, as Mortgagor.
Premises:  One East 62nd Street, Units 4A and 4B, New York, New
York,

17.  The preprinted part of this Mortgage is hereby modified
and supplemented.  Whenever there is any conflict between this
Rider and the preprinted part of this Mortgage, the provisions
of this Rider are paramount and the Mortgage shall be construed
accordingly.

18.  Deleted prior to execution.

19.  Mortgagor agrees to bear all expenses (including
reasonable attorneys' fees for legal services of every kind) of
or incidental to the enforcement of any provisions hereof, or
the enforcement, compromise, or settlement of any of the
collateral secured hereby, and for the curing thereof, or
defending or asserting the rights and claims of Mortgagee in
respect thereof, by litigation or otherwise, and will pay to
Mortgagee any such expenses incurred.

20.  Notwithstanding anything to the contrary contained in this
Mortgage, or the note(s) secured by this Mortgage (the "Note"),
including any express interest rates set forth herein, interest
due hereunder, or under the Note shall be payable at the lower
of (A) 24% per annum, or (B) the maximum legal rate permitted
under the laws of the State of New York (for loans such as the
loan evidenced by the Note and secured by this Mortgage) with
respect only to (i) interest accruing after the maturity of the
Note and this Mortgage; (ii) interest accruing prior to the
maturity of the Note and this Mortgage but unpaid at such
maturity; and (iii) interest during any period during which
Mortgagor has failed to make any payment, or is otherwise in
default, hereunder.  The provisions of this paragraph shall not
be deemed to extend, modify or amend the date when any payment
or performance is due.

21.  Mortgagor hereby appoints Mortgagee as its
attorney-in-fact in connection with any of the personal
property or fixtures covered by this Mortgage to execute and
file at Mortgagor's expense and on Mortgagee's behalf any
financing statements, or other statements, in connection
therewith with the appropriate public office.  This power,
being coupled with an interest, shall be irrevocable as long as
this Mortgage remains unsatisfied.

22.  In the event of any default in the performance of any of
the terms, covenants or agreements herein contained, Mortgagee
shall have the right forthwith after any such default, and
without notice or demand, and without the commencement of any
action to foreclose this Mortgage, and without the appointment
of any receiver, to enter immediately upon and take possession
of the Property without further consent or assignment by
Mortgagor, or any subsequent owner of the Property, with the
right to let the Property, or any part thereof, and to collect
and receive all of the rents, issues, profits and all other
amounts past due, due, or to become due to Mortgagor or any
subsequent owner of the Property by reason of such ownership,
and to apply the same after the payment of all necessary
charges and expenses in connection with the operation of the
Property, including any managing agent's commission or fee, at
the option of Mortgagee, on account of interest, principal,
whether matured or not, taxes, water charges and assessments,
insurance premiums and any advance made by Mortgagee for
improvements, alterations or repairs made by Mortgagee for the
account of Mortgagor or on account of the debt hereby secured;
and Mortgagor hereby irrevocably appoints Mortgagee as

Mortgagor's attorney-in-fact to institute summary proceedings against any tenant of the Property who fails to comply with the provisions of such tenant's lease.  If any action or proceeding be commenced (including an action to foreclose this Mortgage or to collect the debt secured hereby) to which action or proceeding Mortgagee is made a party, or in which it becomes necessary to defend or uphold the lien of this Mortgage, Mortgagor will, on demand, reimburse Mortgagee for all expenses including, without limitation, reasonable counsel fees.

23.   In the event of a foreclosure, the Property, or so much thereof as may be affected by this Mortgage, may be sold in one parcel.

24.   In the event of any default in the performance of any of the terms, covenants or agreements herein contained, it is agreed that Mortgagor, if Mortgagor is the occupant of the Property or any part thereof, shall immediately surrender possession of the Property so occupied to Mortgagee, and if Mortgagor is permitted to remain in possession, the possession shall be as tenant at will or at sufferance of Mortgagee and Mortgagor shall, on demand, pay monthly in advance, to Mortgagee the current reasonable rental for the space so occupied and in default thereof, Mortgagor may be dispossessed by the usual summary proceedings.  In case of foreclosure and the appointment of a receiver of rents, the covenants herein contained may be enforced by such receiver.

25.   (a)  The failure of Mortgagee to exercise the option for acceleration of maturity and/or foreclosure following any default as set forth herein, or to exercise any other option granted to Mortgagee hereunder, in any one or more instances, or the acceptance by Mortgagee of partial payments hereunder, shall not constitute a waiver of any such default, nor extend or affect the grace period, if any, but such option shall remain continuously in force.  Acceleration of maturity, once claimed hereunder by Mortgagee may, at the option of Mortgagee, be rescinded by Mortgagee's written acknowledgement to that effect, but the tender and acceptance of partial payments alone shall not in any way affect or rescind such acceleration of maturity nor extend or affect the grace period provided for the cure of such default, if any.

      (b)  All rights and remedies of Mortgagee shall be cumulative and may be exercised singly or concurrently.

26.   Nothing herein contained nor any transaction related hereto shall be construed or shall so operate either at present or prospectively (a) to require Mortgagor to pay interest at a rate greater than is now lawful in such case to contract for, but shall require payment of interest only to the extent of such lawful rate, or (b) to require Mortgagor to make any payment or do any act contrary to law, but if any provision herein contained shall otherwise so operate to invalidate this Mortgage, in whole or in part, then any such provision only shall be held for naught as though not herein contained and the remainder of this Mortgage shall remain operative and in full force and effect.

27.   Deleted prior to execution.

28.   The entire outstanding principal balance due under the Note, shall at the option of the Mortgagee, be due and payable in the event that Mortgagor:

      (i)   transfers, or agrees to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Property, or any

interest therein (including any air or development rights) without, in any such case, the prior written consent of Mortgagee. Mortgagee may grant or deny such consent in its sole discretion and, if consent should be given, any such transfer shall be subject to this Mortgage and any other documents which evidence or secure the loan secured by this Mortgage, and any such transferee shall assume all of Mortgagor's obligations under this Mortgage and thereunder and agree to be bound by all provisions and perform all obligations contained in this Mortgage and therein. Consent to one such transfer shall not be deemed to be a waiver of the right to require consent to future or successive transfers. As used herein "transfer" shall include, without limitation, (i) any sale, assignment, lease or conveyance except leases for occupancy subordinate to this Mortgage entered into at commercially reasonable rents and on other commercially reasonable terms, or (ii) in the event Mortgagor (or a general partner or co-venturer of Mortgagor) is a partnership, joint venture, trust or closely-held corporation, the sale, conveyance, transfer or other disposition of more than ten (10%) percent of any class of the issued and outstanding capital stock of such closely-held corporation or of the beneficial interest of such partnership, venture or trust, or a change of any general partner or any joint venturer, either voluntarily, involuntarily, or otherwise, or (iii) in the event Mortgagor (or a general partner or co-venturer of Mortgagor) is a publicly-held corporation, the sale, conveyance, transfer or other disposition of more than ten (10%) percent of the stock-holdings of any of the Major Shareholders. For purposes of this subparagraph (i), "Major Shareholders" shall mean those five individuals or entities that own the greatest number of shares of each class of stock issued and outstanding of the corporation; or

(ii)    encumbers, or agrees to encumber, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Property, or any interest therein (including any air or development rights), without, in any such case, the prior written consent of Mortgagee. Mortgagee may grant or deny such consent in its sole discretion and, if consent should be given, any such encumbrance shall not be deemed to be a waiver of the right to require consent to future or successive encumbrances. As used herein "encumber" shall include, without limitation, the placing or permitting the placing of any mortgage, assignment of rents or other security device, including, but not limited to a wrap-around mortgage; or

(iii)    discounts any rents or collects the same for a period of more than one (1) month in advance.

29.  This Mortgage, its validity, and the enforceability of all transactions and questions arising hereunder, shall be construed and interpreted according to the laws of the State of New York. Whenever possible, each provision of this Mortgage shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Mortgage shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remaining provisions of this Mortgage.

30.  All the covenants hereof shall run with the Property, and shall inure to the benefit of the parties hereto and their respective permitted successors and permitted assigns.

-3-

31.  No building or other improvement on the Property shall be altered (except for alterations which shall be non-structural in nature, and shall not change the character, use or occupancy of the Property, nor increase or reduce the number of apartments at the Property, and which alterations, collectively in any 12-month period, shall not cost in excess of $5,000), removed or demolished without the prior written consent of Mortgagee, except that the individual tenants thereof may, without the consent of Mortgagee, make alterations to their apartments at the Property to the extent such alterations have been approved by Mortgagor, and provided all alterations at the Property comply, in all respects, with all ordinances, regulations and requirements of all departments or agencies having jurisdiction of the Property and provided further that all necessary licenses or permits therefor are obtained. Notwithstanding the foregoing, structural alterations and/or alterations to or affecting stores in the Property, if any, and/or alterations intended to accomplish a change in use of any portion of the Property from residential to commercial or from commercial to residential shall in each such instance require the consent of Mortgagee.

32.  Mortgagor will pay all taxes and assessments (general and special, foreseen and unforeseen) by not later than the date on which same shall be due and payable, or the date on which the same shall become a lien (unless at such time such tax shall not be due and payable), whichever shall be earlier, and shall pay when due all water charges and sewer rents, and insurance premiums.

33.  Mortgagor warrants and represents to Mortgagee that (i) Mortgagor has marketable title to the Property and to the fixtures and personal property covered by this Mortgage, free of all liens and encumbrances (provided, however, that in the event this Mortgage is specifically designated to be a purchase money mortgage, Mortgagor's warranty as set forth in this clause (i) shall be deemed subject to any state of facts to which Mortgagor acquired title to the Property), (ii) if Mortgagor is a corporation, it is duly organized and existing and the execution of this Mortgage has been duly authorized by its shareholders and Board of Directors, and (iii) if Mortgagor is a partnership, it has been duly formed and is existing and the execution of this Mortgage is not in contravention of the Partnership Agreement or any other document binding the partnership.  Each person executing this Mortgage on behalf of Mortgagor represents and warrants to Mortgagee that he has due and proper authority to execute and deliver this Mortgage and the Note.

34.  Mortgagor will (i) for the benefit of Mortgagee, keep the buildings and improvements on the Property, and all personal property covered by this Mortgage insured against loss by fire, including extended coverage, and such other hazards as Mortgagee may require, in amounts and with insurers satisfactory to Mortgagee; (ii) assign and deliver copies of the policies of insurance set forth in clause (i) hereof to Mortgagee; (iii) and obtain the written consent of Mortgagee to the adjustment of all fire losses in excess of $5,000 with insurance carriers; and (iv) no such insurance policy may, by its terms, be cancelled except upon thirty (30) days written notice from the insurance carrier thereof to Mortgagee.  In the event of loss, Mortgagor will give immediate notice thereof to Mortgagee, and Mortgagee, notwithstanding anything herein contained to the contrary, may, but shall not be required to, make proof of loss to such insurance carrier.  Each insurance carrier is hereby authorized and directed to make payment under such insurance policy, including return of unearned premiums, directly to Mortgagee instead of to Mortgagor and Mortgagee jointly, and Mortgagor appoints Mortgagee, irrevocably, as

-4-

Mortgagor's attorney-in-fact, to endorse any draft therefor. Mortgagee, except as hereinafter otherwise provided, shall have the right to retain and apply the proceeds of any such insurance, at its election, to reduction of the indebtedness secured hereby or to restoration or repair of the Property. The rights of Mortgagee herein specified shall supplement, and in the event of a conflict, shall supercede, its rights under Section 254 of the New York Real Property Law.

35.   In the event of a condemnation, or a taking in lieu thereof, by purchase or otherwise, of the whole or any part of the Property by any governmental authority or agency having jurisdiction, the entire unpaid indebtedness under this Mortgage, including any additional monies advanced hereunder, shall, at the option of Mortgagee, immediately become due and payable.   The condemnation, or a taking in lieu thereof, by purchase or otherwise, of the whole or any part of the Property, shall not reduce the interest provided to be paid on the indebtedness secured hereby, notwithstanding any statutory provisions to the contrary.

36.   In the event the unpaid principal balance of this Mortgage is reduced by Mortgagee applying insurance proceeds or condemnation awards in reduction thereof, then and in such event, notwithstanding such application, principal and interest shall continue to be payable in accordance with the terms of the Note, and such application shall be credited to the final installment or installments of interest or principal becoming due after such application.

37.   Mortgagee shall have all the rights against tenants as set forth in Section 291-f of the Real Property Law of the State of New York and reference to Section 291-f is hereby made. Mortgagor will not, without Mortgagee's prior written consent, (i) cancel, abridge or otherwise modify tenancies, sub-tenancies, leases or subleases of or at the Property, (ii) accept prepayments of installments of rent to become due from tenants or occupants of the Property or any part thereof, or (iii) consent to any assignment or subletting under any of the leases or subleases of the Property, whether or not such assignment or subletting is in accordance with the terms of such leases or subleases.   Upon notice and demand, Mortgagor will from time to time execute and deliver to Mortgagee, in form satisfactory to Mortgagee, an agreement pursuant to Section 291-f of the Real Property Law restricting Mortgagor's right or power, without Mortgagee's consent, to do any of the above.   Mortgagor shall pay Mortgagee the expenses incurred by Mortgagee in connection with the recording of such agreement pursuant to Section 291-f of the Real Property Law.

38.   Mortgagor, within five (5) days written request, will furnish a duly acknowledged written statement setting forth the outstanding principal balance secured by this Mortgage, to what date interest has been paid, the rate of interest, whether any modifications or extensions have been made, whether any security has been released therefrom, and stating either that no offsets or defenses exist against the mortgage debt or, if such offsets or defenses are alleged to exist, the nature thereof.

39.   Deleted prior to execution.

40.   In case of default hereunder, Mortgagee may, in addition to any other rights and remedies available to Mortgagee, but need not, make any payment or perform any act herein required of Mortgagor in any form and manner deemed expedient, and may, but need not, make full or partial payments of encumbrances, if any, and purchase, discharge, compromise or settle any tax lien

or other prior lien or title or claim thereto, or redeem from any tax sale or forfeiture affecting the Property, or contest any tax or assessment. All moneys paid for any of the purposes herein authorized and all expenses paid or incurred in connection therewith, including attorneys' fees, and any other money advanced by Mortgagee to protect the Property and the lien hereof, shall be so much additional indebtedness secured hereby, and shall become immediately due and payable without notice and with interest thereon at the rate of two (2%) percent per month. Inaction of Mortgagee shall never be considered as a waiver of any right accruing to it on account of any default on the part of Mortgagor.

41. In the event of the passage, after the date of this Mortgage, of any Federal law, or law of the State of New York, deducting from the value of real property for the purposes of taxation any lien thereon or changing in any way the laws for the taxation of mortgages or debts secured by mortgages for Federal, state or local purposes, or the manner of collection of any such taxes, or imposing a tax, or both, either directly or indirectly, on this Mortgage or the Note, the holder of this Mortgage, and of the debt which it secures, shall have the right to declare the principal sum and the interest due hereunder, as of a date to be specified by not less than thirty (30) days written notice to be given to Mortgagor by Mortgagee, provided, however, that such election shall be ineffective if payment by Mortgagor of the whole of such tax in addition to all other payments required hereunder is not illegal and if Mortgagor, prior to such specified date, does pay such tax and agrees to pay any such tax when thereafter levied or assessed against the Property and such agreement shall constitute a modification of this Mortgage.

42. Mortgagee shall have the right from time to time to sue for any sums (whether interest, damages for failure to pay principal, or any installment thereof, taxes, installments of principal or any other sums required to be paid under the terms of this Mortgage or any other mortgage to which this Mortgage is expressly subordinate) as the same become due, without regard to whether or not the principal, or any other sums, evidenced by the Note and secured by this Mortgage shall be due and without prejudice to the right of Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced.

43. Any failure by Mortgagee to insist upon the strict performance by Mortgagor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof, and Mortgagee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Mortgagor of any and all of the terms and provisions of this Mortgage to be performed by Mortgagor.

44. If now or at any time hereafter the indebtedness secured by this Mortgage shall be secured also by a security agreement, Mortgagor, from time to time when requested by Mortgagee, will execute and deliver such documents as Mortgagee may request to preserve and maintain the priority of the lien created by such security agreement and shall pay to Mortgagee on demand any expenses incurred by Mortgagee in connection with the preparation, execution and filing of any such documents.

45. If Mortgagor consists of more than one party, such parties shall be jointly and severally liable under any and all obligations, covenants and agreements of Mortgagor contained herein.

-6-

46.  The clauses and covenants contained herein which are construed by Section 254 of the Real Property Law shall be construed as provided in that Section except where a contrary intent is expressed herein; and the additional clauses and covenants contained herein shall afford rights supplemental to and not exclusive of the rights conferred by the clauses and covenants construed by such Section 254 and shall not impair, modify, alter or defeat such rights notwithstanding that such additional clauses and covenants may relate to the same subject matter or provide for different or additional rights in the same or similar contingencies as the clauses and covenants construed by Section 254; and the rights of Mortgagee arising under the clauses and covenants contained in this Mortgage shall be separate, distinct and cumulative and none of them shall be in exclusion of the others; and no act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision, anything herein or otherwise to the contrary notwithstanding.

47.  Wherever used in this Mortgage, unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, the word "lease" shall mean tenancy, subtenancy, lease and/or sublease, the word "Mortgagor" shall mean Mortgagor and/or any subsequent owner or owners of the Property, the word "Mortgagee" shall mean the holder or holders, at the time of this Mortgage, the word "person" shall mean an individual, corporation, partnership or unincorporated association, and the word "Property" shall include the real estate hereinbefore described, together with all equipment, condemnation awards and any other rights or property interests at any time made subject to the lien of this Mortgage by the terms hereof.

48.  The whole of said principal sum and interest and all other sums secured hereby shall become due at the option of Mortgagee if Mortgagor requests or consents to any change in zoning affecting the Property, or any waiver, or exemption from enforcement of any applicable zoning requirement affecting the Property, or materially varies the character or use of the Property, without in each such instance first obtaining the prior consent in writing thereto of Mortgagee.

49.  All interest due under the Note shall be calculated on the basis of a 360-day year for the actual number of days elapsed. Notwithstanding any provision herein or in the Note, the total liability for payment of interest shall not exceed the maximum amount permitted by law.

50.  All installments of interest and principal and all deposits of Escrow Sums shall be paid by means of unendorsed bank checks, or unendorsed checks of Mortgagor, to the direct order of Mortgagee.  Any check received by Mortgagee not conforming to the requirements hereinabove stated for such payments, may be returned by Mortgagee to Mortgagor and, in such event, this Mortgage and the Note shall be construed as if such payment were not sent or received.  Mortgagee may, but shall not be obligated to, accept checks which do not conform to the aforesaid requirements, but the acceptance by Mortgagee of any such checks shall not constitute a waiver of the requirements herein as to any future payments, and such acceptance shall not constitute acquiescence or consent of Mortgagee to any party other than Mortgagor or any such owner acquiring any interest in and to the Property.

51.  No owner of the Property shall be entitled to any credit by reason of the payment of any tax thereon.  If it shall be determined at any time that stamp taxes are due on the amount of the Note secured hereby, Mortgagor will pay the same.

52.   This instrument shall be construed as a security agreement under the Uniform Commercial Code.

53.   All lease securities of tenants at the Property shall be treated as trust funds not to be commingled with any other funds of Mortgagor and all such lease securities and interest, if any, earned thereon, shall at all times be maintained, deposited and disposed of strictly in accordance with applicable legal requirements, and Mortgagor shall, on demand, furnish to Mortgagee satisfactory evidence of compliance with this provision, together with a verified statement of all lease securities deposited by the tenants and copies of all leases and bank records relating to tenant security deposits.

54.   Mortgagee and its authorized representatives shall have the right at all reasonable times to enter upon and inspect any portion of the Property.

55.   Mortgagee may, at its option, at intervals of not more than once per year, procure tax, water, sewer rental charges, assessment and/or state, county or municipal searches on the Property for which Mortgagor shall be charged.

56.   If any mechanics' and/or materialmen's lien or any other lien or encumbrance is filed against the Property, Mortgagor shall cause such lien or encumbrance to be discharged of record by payment, bonding or otherwise, within twenty (20) days of the filing thereof.  Failure to so discharge of record any such lien or encumbrance within the period specified shall constitute a default hereunder and shall entitle Mortgagee, at Mortgagee's option, to declare the whole of said principal sum and interest thereon and all other sums secured hereby to be due and payable.  If Mortgagor has not so discharged any such lien or encumbrance within such twenty (20) day period, Mortgagee may, but shall not be obligated to, advance funds necessary to discharge of record such lien or encumbrance and all sums so advanced, together with interest thereon from the date of advance to the day of payment thereof at the rate of 2% per month, shall be payable by Mortgagor to Mortgagee on demand and, together with such interest, shall be secured by the lien of this Mortgage.  Any expenses incurred by Mortgagee in connection with the examination of title to the Property in order to ascertain the existence of any such lien or encumbrance and/or the discharge of record thereof, shall constitute advances made by Mortgagee under the provisions of this paragraph, which shall be payable by Mortgagor to Mortgagee on demand, together with interest as aforesaid and which, together with such interest, shall be secured by the lien of this Mortgage.

57.   Mortgagee may, at Mortgagee's option, foreclose this Mortgage for any portion of the debt or any other sums secured hereby which are then due and payable, subject to the continuing lien of this Mortgage for the balance of the mortgage debt not then due.

58.   Deleted prior to execution.

59.   Paragraph 14 herein is hereby supplemented to provide that the whole of said principal sum and the interest thereon shall become due at the option of Mortgagee in the following additional events:  (k) Mortgagee's discovery of Mortgagor's failure to disclose any fact deemed by Mortgagee to be material or of the making in any of the said agreements or any affidavit or other documents submitted in connection with the same or the indebtedness of any misrepresentation by, on behalf of or for the benefit of Mortgagor; or (l) Mortgagor's failure duly to account to Mortgagee's satisfaction at such time or times as Mortgagee may require for any of the security or proceeds

-8-

thereof coming into the control of Mortgagor; or (m) the institution of any suit affecting Mortgagor deemed by Mortgagee to affect adversely its interest hereunder, the security or otherwise; or (n) if Mortgagor fails or suspends business, makes an assignment for the benefit of creditors, applies for an extension from or composition with creditors, or if a trustee, receiver, or liquidator, be appointed for Mortgagor for any of its property, or under the provisions of any State Insolvency Law a petition be filed by or against Mortgagor; if such petition under said Bankruptcy Act shall be filed against Mortgagor, Mortgagor shall have thirty (30) days in which to cause said petition to be dismissed.

60.  Mortgagor shall not assign (except to the extent same may have heretofore been assigned to the holder of any mortgage to which this Mortgage is expressly subordinate) the whole or any part of the rents, income or profits arising from the Property without the written consent of Mortgagee and any assignment thereof shall be null and void.  Mortgagor shall (i) fulfill or perform each and every condition and covenant of each lease to be fulfilled or performed by the lessor thereunder; (ii) give prompt notice to Mortgagee of any notice of default by the lessor under each lease received by Mortgagor together with a complete copy of any such notice, and (iii) enforce the performance or observance of each and every covenant and condition of each lease by the tenant thereunder to be performed or observed.  The provisions of this paragraph shall survive any Transfer and the delivery of the deed affecting such Transfer.  Nothing in this paragraph shall be deemed to be a consent to a sale, conveyance or transfer of the Property in whole or in part by Mortgagor.

61.  As additional security for the payment of the indebtedness evidenced by the Note, Mortgagor hereby assigns to Mortgagee all of the rents, issues, benefits and profits of the Property, including all leases now or hereafter entered into covering any part of the Property, including all interest of Mortgagor as landlord in and to the same, all of which are hereby assigned to Mortgagee, subject to the right of Mortgagor to receive the same until a default beyond any applicable cure period occurs under this Mortgage or the Note.

62.  This Mortgage covers real property principally improved or to be improved by one or more structures containing in the aggregate not more than six residential dwelling units, each having their own separate cooking facilities.

63.  Mortgagor represents and warrants that neither Mortgagor nor any prior owner of the Property or any tenant, subtenant, prior tenant or prior subtenant have (i) used or installed any "Hazardous Materials" (as such term is hereinafter defined) on, from, or affecting the Property; or (ii) received any notice from any governmental authority or any tenant with regard to Hazardous Materials on, from or affecting the Property. Mortgagor covenants that the Property shall be kept free of Hazardous Materials, and shall not be used to generate, manufacture, refine, transport, treat, store, handle, dispose, transfer, produce or process Hazardous Materials, and Mortgagor shall not cause or permit, as a result of any intentional or unintentional act or omission on the part of Mortgagor or any tenant or subtenant, the installation of Hazardous Materials in or on the Property or a release of Hazardous Materials onto the Property or suffer the presence of Hazardous Materials on the Property.  Mortgagor shall comply with and ensure compliance by all tenants and subtenants with all applicable federal, state and local laws, ordinances, rules and regulations, with respect to Hazardous Materials, and shall keep the Property free and clear of any liens imposed pursuant to such laws, ordinances, rules and regulations.  In the event that Mortgagor receives

-9-

any notice from any governmental authority with regard to Hazardous Materials on, from or affecting the Property, Mortgagor shall promptly notify Mortgagee. Mortgagor shall conduct and complete all investigations, studies, sampling, and testing, and all remedial, removal, and other actions necessary to clean up and remove all Hazardous Materials on, from or affecting the Property, in accordance with all applicable Federal, state and local laws, ordinances, rules, regulations, and policies and to the satisfaction of Mortgagee. For purposes of this paragraph, "Hazardous Materials" shall include, without limitation, any flammable explosives, radioactive materials, hazardous materials, hazardous wastes, hazardous or toxic substances, or related materials, asbestos or any material containing asbestos, or any other substance or material as defined by any Federal, state or local environmental law, ordinance, rule, or regulation including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. Sections 9601, et seq.), the Hazardous Materials Transportation Act, as amended (49 U.S.C. Sections 1801, et seq.), the Resource Conservation and Recovery Act, as amended (42 U.S.C. Sections 9601 et seq.), and in the regulations adopted and publications promulgated pursuant thereto. Mortgagor shall indemnify and hold Mortgagee harmless from and against any losses, expenses, liabilities and claims arising from any breach or default by Mortgagor of its representations or obligations under this paragraph, including, without limitation, enforcing the obligations of the Mortgagor under this paragraph, including, without limitation, reasonable attorneys' fees. The obligations and liabilities of Mortgagor under this paragraph shall survive the foreclosure of this Mortgage or the delivery of a deed in lieu of foreclosure.

64. Mortgagor shall not attempt to obtain or effect the designation or registration of any portion of the improvements encumbered by this Mortgage by or with any governmental authority as a historic or landmark building or any other similar designation or registration.

65. In the event that any payment provided for in the Note shall not be paid when due, a late charge of six (6¢) cents for each dollar ($1.00) so overdue shall become immediately due to Mortgagee as liquidated damages for failure to make prompt payment and shall be part of the indebtedness secured hereby. Late charges shall be payable with the next installment of principal and/or interest due under the Note.

66. All notices, elections, demands, requests and responses thereto permitted or required to be given under this Mortgage shall be given in accordance with and in the manner provided in the Note.

67. Mortgagor shall duly and punctually pay to Mortgagee, as and when due and payable, the indebtedness evidenced by the Note and secured by this Mortgage. As used in this paragraph and elsewhere in this Mortgage, the term "indebtedness" shall mean and include the principal sum evidenced by the Note together with all interest thereon, and other payments due to Mortgagee under the Note, all costs of collection provided for in the Note and this Mortgage, and all other sums and charges at any time secured by or otherwise due under this Mortgage; provided, however, that the maximum principal amount which is, or under any contingency may be, secured hereby is $600,000.00.



TESSA KENNEDY

-10-

**ALL-PURPOSE ACKNOWLEDGMENT**

No. 5

State of __CALIFORNIA__

County of __LOS ANGELES__

On __Dec. 15 1992__ before me, __Darrell Armstrong, Notary Public__
DATE · · · · · · · · · · · · NAME, TITLE OF OFFICER - E.G., "JANE DOE, NOTARY PUBLIC"

personally appeared __CASSIAN CARY ELWES__
· · · · · · · · · · · · · · · · · · · · · NAME(S) OF SIGNER(S)

☐ personally known to me – OR – ☑ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are
subscribed to the within instrument and
acknowledged to me that he/she/they
executed the same in his/her/their
authorized capacity(ies), and that by
his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of
which the person(s) acted, executed the
instrument.

OFFICIAL SEAL
DARRELL ARMSTRONG
Notary Public–California
LOS ANGELES COUNTY
My Commission Expires
April 8, 1994

Witness my hand and official seal.

_Darrell Armstrong_
SIGNATURE OF NOTARY

**CAPACITY CLAIMED BY SIGN**

☐ INDIVIDUAL

☐ CORPORATE
OFFICER(S)
· · · · · · · · · TITLE(S)

☐ PARTNER(S)  ☐ LIMITED
· · · · · · · · · · ☐ GENERAL

☒ ATTORNEY-IN-FACT

☐ TRUSTEE(S)

☐ GUARDIAN/CONSERVATOR

☐ OTHER: _____
_____
_____

**SIGNER IS REPRESENTING:**
NAME OF PERSON(S) OR ENTITY(IES)

__TESSA KENNEDY__
_____
_____

ATTENTION NOTARY: Although the information requested below is OPTIONAL, it could prevent fraudulent attachment of this certificate to an unauthorized document.

THIS CERTIFICATE
MUST BE ATTACHED
TO THE DOCUMENT
DESCRIBED AT RIGHT:

Title or Type of Document _____

Number of Pages_____ Date of Document _____

Signer(s) Other than Named Above_____

©1992 NATIONAL NOTARY ASSOCIATION · 8236 Remmet Ave., P.O. Box 7184 · Canoga Park, CA 913

<u>Condominium Rider</u>

THIS RIDER made this _____ day of November, 1992 and is incorporated into and shall be deeemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note in the original principal amount of $600,000.00 to the parties set forth in Schedule I of the Security Instrument (the "Lender") of the same date and covering the Property described in the Security Instrument comprised of condominium Units 4A/4B located at: 1 East 62nd Street, New York, New York.

The Property includes two units in, together with an undivided interest in the common elements of, a condominium project known as: The Spencer Condominium (the "Condominium project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.    Condominium Obligations. Borrower shall perform all of the Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are (i) the Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations or rules and regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B.    Hazard Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then Borrower shall cause to be issued and maintained in full force and effect insurance coverage thereunder naming Lender as an insured. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, with any excess paid to Borrower.

C.    Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D.    Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument.

E.    Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i)    the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii)    any amendment to any provision of the Constituent Documents if the provision is for the benefit of Lender;

(iii)    termination of professional management and assumption of self-management of the Owners Association; or

(iv)    any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F.    Remedies.  If Borrower does not pay condominium dues and assessments when due, then Lender may pay them.  Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

*TESSA KENNEDY*
Tessa Kennedy
*By Cassian Elwe*
*Att'in fact*

WITNESSETH:

_____

---

**ALL-PURPOSE ACKNOWLEDGMENT**                                                                 No. 5170

State of CALIFORNIA
County of LOS ANGELES

On Dec. 15, 1992 before me, Darrell Armstrong, Notary Public
                                    NAME, TITLE OF OFFICER - E.G., "JANE DOE, NOTARY PUBLIC"

personally appeared    CASSIAN CARY ELWES
                                    NAME(S) OF SIGNER(S)

☐ personally known to me - OR - ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

OFFICIAL SEAL
DARRELL ARMSTRONG
Notary Public-California
LOS ANGELES COUNTY
My Commission Expires
April 8, 1994

Witness my hand and official seal.

*Darrell Armstrong*
SIGNATURE OF NOTARY

**CAPACITY CLAIMED BY SIGNER**
☐ INDIVIDUAL
☐ CORPORATE
    OFFICER(S)_____
                                    TITLE(S)
☐ PARTNER(S)  ☐ LIMITED
                       ☐ GENERAL
☑ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____
_____
_____

**SIGNER IS REPRESENTING:**
NAME OF PERSON(S) OR ENTITY(IES)
TESSA KENNEDY
_____

ATTENTION NOTARY: Although the information requested below is OPTIONAL, it could prevent fraudulent attachment of this certificate to an unauthorized document.

THIS CERTIFICATE
MUST BE ATTACHED
TO THE DOCUMENT
DESCRIBED AT RIGHT:

Title or Type of Document _____
Number of Pages _____ Date of Document _____
Signer(s) Other than Named Above _____

SCHEDULE A

**Description**

## SCHEDULE A

## PROPERTY DESCRIPTION

The Condominium Units (in the building known as The Spencer Condominium and by the street number One East Sixty Second Street, Borough of Manhattan, County of New York, City and State of New York, said Unit being designated and described as Units No. 4A and 4B in that certain declaration dated November 21, 1986 made by Grantor pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act") establishing a plan for condominium ownership of the Building and the land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described in Exhibit A annexed hereto and made a part hereof), which declaration was recorded in the New York County Office of the Register of The City of New York on January 5, 1987 in Reel 1168 page 1229, (which Declaration and First Amendment thereto are hereinafter collectively referred to as the "Declaration"). The Units are also designated as Tax Lot 1107 and 1108 in Block 1377 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of The City of New York and on the Floor Plans of the Building, certified by William A. Hall on October 15, 1986, and filed with the Real Property Assessment Department of The City of New York on January 5, 1987, as Condominium Plan No. 379 and also filed in the City Register's Office on Janaury 5, 1987.

TOGETHER WITH an undivided 8.88 and 5.47% Interest in the Common Elements (as such term is defined in the Declaration).

TOGETHER WITH the appurtenances and all the estate and rights of the party of the first part in and to the Unit.

TOGETHER WITH an easement in common with the owners of other Units in the Building, to use any pipes, wires, ducts, cables, conduits, public utility lines and other common elements located in any such other Units or elsewhere in the Condominium serving the Unit.

TOGETHER WITH AND SUBJECT TO all easements of necessity in favor of the Unit, and in favor of other Units in the Buildng and the Common Properties.

This land upon which the Building containing the Unit is located in described as follows:

ALL that certain plot, piece or parcel of land situate lying and being in the Borough of Manhattan, City, County and State of New York bounded and described as follows:

BEGINNING at a point in the northerly side of 62nd Street distant 108 feet easterly from the corner formed by the intersection of the easterly side of Fifth Avenue with the said northerly side of 62nd Street and

Running, Thence northerly parallel with Fifth Avenue 100 feet 5 inches to the center lines of the block;

Thence easterly along said center line of the block and parallel with 62nd Street 42 feet;

Thence southerly parallel with Fifth Avenue and part of the distance through a party wall 100 feet 5 inches to the northerly side of 62nd Street; and

Thence westerly along  ...e northerly side of 62nd Street    , feet
to the point or place of Beginning.

Together with an easement of light and air over the strip of
land 6 feet in width by 100 feet 5 inches in depth adjoining
the above described premises on the west as set forth in
instruments recorded in Liber 1138 page 650, Liber 1238 page 4
and liber 1252 page 242 in the Office of the Register of the
County of New York.

**SCHEDULE I**

**Identity of Mortgagee**

TE AFFIDAVIT

STATE OF CALIFORNIA  )
                     )  SS.
COUNTY OF ~Alameda~  )

      Tessa Kennedy (the "Borrower"), being duly sworn,
deposes and says as follows:

      1.    That she is the owner of certain real property
located at 1 East 62nd Street, New York, New York particularly
described in a certain first mortgage (the "Mortgage") to be
made and delivered in favor of the parties annexed hereto as
Schedule 1 ("Mortgagee"), and intended to be recorded in the
records of New York County on or about this date.

      2.    That there are no occupants or persons entitled
to the occupancy of said premises other than Borrower; and that
no person has any right on or in the premises or makes any
claim thereto.

      3.    That she has no knowledge of any fact or
circumstance calling into question that all documents
evidencing Borrower's right lawfully to occupy the premises
were duly issued in the usual course, and that she has not
received notice of any violation of any covenants, ordinances,
statutes, rules, orders or other regulations, nor any notice
that the Certificate of Occupancy or equivalent certification,
if any, has been called into question or revoked, nor has she
received any notice that the premises or the use to which they
have been put is being challenged by any court, administrative
body, municipal corporation or official having jurisdiction.

      4.    Borrower is the only entity who or which is
interested in the title as owner, both of record and off record.

      5.    That all of the fixtures, equipment or other
items which are attached, affixed or appurtenant to the
premises and incorporated therein without alteration from their
original state (by way of example only, not limitation:
heating, ventilating and air conditioning units, furnaces,
elevators) have been fully paid for or are being paid for this
date out of the proceeds of the mortgage loan, and none of said
items is subject to any lien or claim by any person other than
the Mortgagee named in the Mortgage.

6.    The premises has been constructed, and present exists, in compliance with any existing environmental protection laws or regulations, and the property has not been used for storage of any hazardous materials.

7.    That there has been no notice of any claim made by any person for commissions or brokerage or any other participation in the income from or ownership of the subject premises, and that no persons have any liens or claims for money which are or may be superior to the lien and charge of the Mortgage.

8.    That Borrower has no knowledge or notice of any claim of any matter or charge which would call Borrower's title into question or interfere with its exclusive right of possession.

This affidavit is made to induce the Mortgagee to disburse the funds to be secured by said Mortgage, and is made with the knowledge that representations herein will be relied upon by said Mortgagee and its title insurer.

Other than that, affiant saith not.

IN WITNESS WHEREOF, the undersigned has hereunto placed his hand this 15th day of November, 1992.
December.

By: X *Tessa Kennedy*
Tessa Kennedy
*By Cassian Elwes*
*Atty in fact*

Sworn to before me this
_____ day of November, 1992

---

**-PURPOSE ACKNOWLEDGMENT**                                     No. 8178

State of  CALIFORNIA

County of LOS ANGELES

On Dec. 15, 1992 before me, *Darrell Armstrong, Notary Public*
       DATE                    NAME, TITLE OF OFFICER - E.G., "JANE DOE, NOTARY PUBLIC"

personally appeared    CASSIAN CARY ELWES
                        NAME(S) OF SIGNER(S)

[ ] personally known to me - OR - [✓] proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

OFFICIAL SEAL
DARRELL ARMSTRONG
Notary Public-California
LOS ANGELES COUNTY
My Commission Expires
April 6, 1994

Witness my hand and official seal.

*Darrell Armstrong*
SIGNATURE OF NOTARY

**CAPACITY CLAIMED BY SIGNER**

[ ] INDIVIDUAL
[ ] CORPORATE
      OFFICER(S)              TITLE(S)
[ ] PARTNER(S)  [ ] LIMITED
                [ ] GENERAL
[✓] ATTORNEY-IN-FACT
[ ] TRUSTEE(S)
[ ] GUARDIAN/CONSERVATOR
[ ] OTHER: _____
_____
_____

**SIGNER IS REPRESENTING:**
NAME OF PERSON(S) OR ENTITY(IES)

TESSA KENNEDY
_____
_____

ATTENTION NOTARY: Although the information requested below is OPTIONAL, it could prevent fraudulent attachment of this certificate to an unauthorized document.

THIS CERTIFICATE
MUST BE ATTACHED
TO THE DOCUMENT
DESCRIBED AT RIGHT:

Title or Type of Document _____
Number of Pages _____ Date of Document _____
Signer(s) Other than Named Above _____

©1992 NATIONAL NOTARY ASSOCIATION · 8236 Remmet Ave., P.O. Box 7184 · Canoga Park, CA 91304-7184

**EXHIBIT 2**

GUARANTY

KNOW ALL MEN BY THESE PRESENTS:

WHEREAS:  A.   OBERMAN, TIVOLI, MILLER & LOW, as Servicing Agent, having an office at 500 South Sepulveda Boulevard, Los Angeles, California ("Lender") has been requested to make a loan (the "Loan") to Tessa Kennedy (hereinafter referred to as "Borrower"), in the principal sum of $600,000.00, together with interest thereon, on land located in the City and State of New York, together with the building (the "Building") and other improvements erected thereon, commonly known as Condominium Unit Nos. 4A and 4B in The Spencer Condominium, 1 East 62nd Street, New York, New York (the "Mortgaged Property");

B.   Kenneth J. Roberts residing at:   309 Mandeville Canyon Road, Los Angeles, California 90049, California (hereinafter referred to as "Guarantor") has a substantial financial interest in obtaining the Loan; and

C.   Lender has declined to grant the Loan unless Guarantor unconditionally guaranties the payment of all sums due, and performance of all obligations under the documents evidencing, securing, or entered into in connection with the Loan (collectively, the "Loan Documents") including without limitation, the mortgage note ("Note") in the principal amount of the Loan, and the first mortgage ("Mortgage") securing the Note and encumbering the Mortgaged Property.

NOW, THEREFORE, in consideration of Lender's promise to make the Loan to Borrower, and for other valuable considerations received, Guarantor hereby unconditionally and irrevocably guaranties to Lender, its successors and assigns, (a) the prompt and full repayment of the sum of (i) the "Guaranteed Amounts" (as such term is hereinafter defined), plus (ii) all costs and expenses of Lender in enforcing this Guaranty (including attorney's fees); and (b) due performance of all obligations under the Loan Documents.  As used herein the term "Guaranteed Amounts" shall mean all amounts of whatever nature due or payable by, or assessable against, Borrower with respect to the Loan and pursuant to the Note, Mortgage and/or Loan Documents  (including, without limitation, amounts which Lender may advance or pay to or on behalf of Borrower subsequent to the initial funding of the Loan.

The obligations of Guarantor hereunder are direct, unconditional and completely independent of the obligations of the Borrower.  A separate cause of action or separate causes of action may be brought and prosecuted against the Guarantor without the necessity of joining the Borrower or previously proceeding or exhausting any other remedy against the Borrower (or any other person who might have become liable for the indebtedness by assumption thereof) or of realizing upon any security then held by Lender to secure the Loan.

The Guarantor hereby specifically waives any and all defenses of any and every kind to any action or proceeding brought to enforce this Guaranty or any part of this Guaranty either at law or in equity.  Without limiting the foregoing in anywise, but merely by way of illustration, the Guarantor specifically waives any and all technical, dilatory or nonmeritorious defenses and also waives all defenses predicated upon:

1.   Disability on the part of the Borrower;

2.   Any change, alteration, amendment or modification in any of the Note, the Mortgage or other Loan Documents, whether with or without knowledge or consent of Guarantor;

3.    Indulge or forbearance in the enforcement of any term of either the Note or Mortgage or any other Loan Documents or any term for the repayment of the indebtedness evidenced by the Note;

4.    Change of ownership of the premises covered by the Mortgage;

5.    A release of all or any part of the security securing or collateralizing the Loan, whether for valuable consideration or otherwise;

6.    Acquiring additional security;

7.    Substitution of different security in exchange or exchanges for part or parts of the original security securing or collateralizing the Loan;

8.    The fact that there may be persons other than the Guarantor, solvent and responsible for the payment of the indebtedness (having assumed such obligation in whole or in part in connection with any transfer of the title to the Mortgaged Property);

9.    Any defense or right of set off, or claims, including, without limitation, claims of usury, which Borrower or Guarantor may have against Lender;

10.    The invalidity or unenforceability of the Note, Mortgage or any other Loan Document;

11.    Fraud in the inducement of the loan evidenced by the Loan Documents; and/or

12.    Lack of consideration to Guarantor with respect to the giving of this Guaranty.

The liability hereunder assumed shall not be affected by the acceptance of any settlement or composition offered by the Borrower either in liquidation, readjustment, receivership, bankruptcy or otherwise. This is an absolute, present and continuing Guaranty. This Guaranty may be enforced by Lender at any time without resorting to or exhausting any other remedies under the Note, Mortgage or other Loan Documents through foreclosure under the Mortgage or otherwise. Nothing contained herein or otherwise shall prevent Lender from pursuing concurrently or successively all other rights and remedies at law or in equity under the Note, the Mortgage, the other Loan Documents or otherwise.

Lender shall not be required to give notice to the Guarantor of any failure or omission on the part of the Borrower to meet any payments sooner than at the time payment hereunder is demanded, and Guarantor expressly waives any other notice, diligence, presentment, demand for payment and protest.

This instrument is to be construed as a continuing, binding, absolute and unconditional guaranty which shall remain in full force and effect as written until actual payment of the Note, both principal and interest, and all other sums due under the Loan Documents, or until terminated by agreement among the Guarantor and the holder of this Guaranty. It is agreed that Lender may, without notice or the consent of the Guarantor, assign this Guaranty in whole or as to such part which has not been realized upon, to any noteholder or any other person for any reason.

Guarantor shall pay all attorney's fees and disbursements, and all other costs and expenses incurred by Lender in the event that Lender shall be obliged to resort to the courts or otherwise require the services of an attorney to enforce this Guaranty.

-2-

Any indebtedness or obligations of Borrower to Guarantor now or hereafter existing (including, but not limited to, any rights of subrogation Guarantor may have as a result of any payment by Guarantor under this Guaranty), together with any interest thereon, shall be, and such indebtedness hereby is subordinated to the prior payment in full of the indebtedness of Borrower to Lender under the Note, Mortgage and other Loan Documents.  Guarantor agrees that, following any event of default under the Note, Mortgage or other Loan Documents, Guarantor will not accept any payment or satisfaction of any kind of any indebtedness of Borrower to Guarantor, and Guarantor hereby assigns to Lender all right, title, and interest in such indebtedness, including the right to file proof of claim and to vote thereon in connection with any bankruptcy, insolvency, or reorganization proceeding, and including the right to vote on any plan of arrangement or reorganization.  Further, Guarantor agrees that following any default under the Note, Mortgage or other Loan Documents (i) Guarantor shall not accept payment from any other guarantor of the Note by way of contribution on account of any payment made hereunder by Guarantor to Lender, (ii) Guarantor will not take any action to exercise or enforce any rights to such contribution, and (iii) if any Guarantor should receive any payment, satisfaction or security for any indebtedness of Borrower to such Guarantor or for any contribution by any other Guarantor of the Note for payment made hereunder by such Guarantor to Lender, the same shall be delivered to Lender in the form received, endorsed or assigned as may be appropriate for application on account of or as security for the indebtedness of Borrower to Lender and, until so delivered, shall be held in trust for Lender as security for the indebtedness of Borrower to Lender.

This Guaranty shall be construed in accordance with the laws of the State of New York and cannot be modified, amended or terminated orally.  If any part of this Guaranty shall not be valid under the laws of the State or New York or under any other law, such part shall be rendered inoperative, but the remainder of this Guaranty shall be enforceable.  The Guarantor irrevocably consents to the jurisdiction of the courts of the State of New York and irrevocably agrees that any action or proceeding brought with respect to or in connection with the Note, Mortgage, Loan Documents, and for this Guaranty shall be brought, commenced or maintained in such court in the City and State of New York as Lender shall designate, unless Lender shall designate a different jurisdiction.

Wherever the word "Lender" appears, the rights and authority granted Lender shall inure to the benefit of its successors and assigns (whether such statement follows the word Lender or not), and the agreement contained herein by the Guarantor shall bind the heirs, successors and personal representatives of the Guarantor jointly and severally.

It is expressly understood and agreed that any and all amounts recovered or recoverable by Lender in connection with enforcement of any other rights or remedies of Lender under the Note, the Mortgage and other Loan Documents (including foreclosure of the Mortgage or the taking of a deed in lieu of foreclosure), shall not in any way be credited against, be an offset against, or otherwise decrease the amount of liability of Guarantor under this Guaranty.  It is expressly understood and agreed that, in addition to all other rights and remedies that Lender has under the Note, the Mortgage and the other Loan Documents, to foreclose upon the Mortgaged Property and to realize upon any other collateral for the Note, Lender may obtain a deficiency judgment in any action or proceeding to foreclose the Mortgage (or otherwise proceed in one or more separate actions) against the Guarantor in an amount up to the

Guaranteed Amount until the full amount of all sums due under the Note, Mortgage and other Loan Documents has been paid in full.  Nothing in this paragraph or otherwise in this Guaranty shall in any way be deemed to limit or abridge any of Lender's rights to enforce to the fullest extent all of its rights and remedies under the Note, the Mortgage and the other Loan Documents and to obtain the full amount payable under the Note, the Mortgage and the other Loan Documents by foreclosure of the Mortgage or otherwise.

          IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the _15_ day of November, 1992.

WITNESSETH                              Kenneth J. Roberts,  GUARANTOR

STATE OF  California
                        )ss.:
COUNTY OF  Los Angeles )

                    December
        On the  15th day of NOVEMBER, 1992, before me
personally came Kenneth J. Roberts to me known to be the
individual described in and who executed the foregoing
instrument, and acknowledged that he executed the same.



OFFICIAL SEAL
DARRELL ARMSTRONG
Notary Public-California
LOS ANGELES COUNTY
My Commission Expires
April 8, 1994

_____
Notary Public
Darrell Armstrong